IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **K.E.,** | : | CIVIL ACTION NO. 1:15-CV-1634 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **DOVER AREA SCHOOL DISTRICT**, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff K.E. brings this civil rights action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a); and 42 U.S.C. § 1983. (Doc. 4). K.E. additionally asserts pendant state law claims for assault, battery, and intentional infliction of emotional distress. (Id.) Before the court are two motions to dismiss for failure to state a claim, filed by defendants Lincoln Intermediate Unit 12 ("Lincoln") (Doc. 21) and Dover Area School District ("the District") and Richard Nilsen ("Nilsen") (Doc. 22), respectively. The motions will be granted in part and denied in part.

I. **Factual Background and Procedural History**

The instant case arises from allegations that a male music teacher employed by the District sexually assaulted a female student over the course of four years, causing her to become pregnant at the age of thirteen. The alleged victim, plaintiff K.E., is no longer a minor. (Doc. 4 ¶¶ 2-3). The court refers to K.E. by her initials

due to the sensitive nature of the claims and her status as a minor during the period of the alleged assaults. (See id. ¶ 2); see also LOCAL RULE OF COURT 5.2(d)(2).

In 2000, administrative staff of the District received complaints that music teacher Matthew Puterbaugh ("Puterbaugh") had engaged in inappropriate behavior with female students enrolled in his band class. (Doc. 4 ¶¶ 16-17). The District performed an investigation into the allegations but ultimately took no disciplinary action against Puterbaugh. (Id. ¶ 17). The District did not report the underlying claims to law enforcement authorities, child protective services agencies, or the Pennsylvania Department of Welfare. (Id.)

Puterbaugh was K.E.'s intermediate and high school music teacher from January 2001 through 2007. (Id. ¶¶ 7, 12). Puterbaugh began to sexually abuse K.E. in January 2001, when she was eleven years old. (Id. ¶ 12). During that period, Puterbaugh touched K.E. inappropriately and exposed his genitals to her. (Id.) Sometime after K.E. turned twelve, and continuing for three years thereafter, Puterbaugh repeatedly engaged in sexual intercourse with K.E. and subjected her to other forms of sexual assault. (Id. ¶¶ 13-14). Each such incident occurred during music lessons provided through the District, at either Dover Intermediate School, Puterbaugh's residence, or K.E.'s residence, when her parents were absent. (Id. ¶ 14). K.E. became pregnant at the age of thirteen as a result of sexual intercourse with Puterbaugh; she subsequently obtained an abortion. (Id. ¶ 15).

K.E. reported Puterbaugh's conduct "[o]n at least two occasions between 2001 and 2004 . . . to teachers and/or administrative staff at . . . Dover Intermediate

School and/or" Lincoln. (Id. ¶ 18). In the first instance, K.E. disclosed the abuse to teachers at Dover Intermediate School, who communicated her allegations to a school guidance counselor. (Id. ¶ 19). Neither the administration of Dover Intermediate School nor the District undertook any "effective investigation or other action" in response. (Id.) Staff at Dover Intermediate School sought K.E.'s recantation, urging that Puterbaugh was a "good teacher" and that her assertions would "ruin his . . . career." (Id.) K.E. acquiesced, abnegating her claims entirely. (Id.)

Upon matriculating at Dover Area High School, K.E. exhibited signs of social maladjustment and emotional disturbance. (Id. ¶¶ 20-21). The high school assigned K.E. to special education classes with Lincoln, designed for students requiring enhanced emotional support. (Id. ¶¶ 10, 21). K.E. reported Puterbaugh's conduct to a teacher at the high school in November 2004. (Id. ¶ 22). The teacher in turn informed high school officials and a Lincoln specialist of K.E.'s allegations. (Id. ¶ 23). Immediately thereafter, K.E. received pressure from Puterbaugh and school staff to rescind her claims. (Id. ¶ 24). She promptly recanted, stating that she would "lie and say that it did not happen" if asked. (Id.) Officials from the District, Dover High School, Dover Intermediate School, and Lincoln terminated their investigation of Puterbaugh and elected not to report K.E.'s allegations to law enforcement authorities, child protective services agencies, or the Pennsylvania Department of Welfare. (Id. ¶ 25).

In 2015, following additional complaints against Puterbaugh and an ensuing criminal investigation, Puterbaugh pled guilty to involuntary deviate sexual intercourse arising from his abuse of K.E. (Id. ¶¶ 27-34). Nilsen served as superintendent of the District at all times relevant to the matter *sub judice*. (Id. ¶ 6).

K.E. commenced the instant action on August 24, 2015 and filed an amended complaint on August 26, 2015. (Docs. 1, 4). Therein, K.E. first alleges that certain policies, customs, and practices maintained by the District and Nilsen violated (1) her Fourth Amendment right to security of person; (2) her Fourteenth Amendment rights to due process and equal protection; (3) the IDEA; and (4) Section 504, all pursuant to 42 U.S.C. § 1983 (Count I). (Doc. 4 ¶¶ 38-42). K.E. further asserts that the District and Nilsen violated her Fourteenth Amendment right to due process by affirmatively placing her in a position of danger (Count II). (Id. ¶¶ 43-45). Additionally, K.E. charges that the District and Lincoln discriminated against her on the basis of gender, in contravention of Title IX (Count III). (Id. ¶¶ 46-51). K.E. also asserts, exclusively against Puterbaugh, constitutional claims under § 1983 and state law claims for assault, battery, and intentional infliction of emotional distress (Counts IV-VI). (Id. ¶¶ 52-59). To rectify her alleged injuries, K.E. seeks compensatory and punitive damages and attorneys' fees and costs. (Id. ¶ 62).

In two separate motions, Lincoln, the District, and Nilsen seek dismissal of Counts I through III of the amended complaint pursuant to Rule 12(b)(6). (Docs. 21, 22). The motions are fully briefed and ripe for disposition.

**II.     Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' "  Id. at 130 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim

5

"has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 251, but leave is broadly encouraged "when justice so requires." FED. R. CIV. P. 15(a)(2).

## III.   Discussion

The instant motions *in extenso* challenge the sufficiency of Counts I through III of K.E.'s amended complaint. As a threshold matter, the District and Nilsen assert that K.E.'s official-capacity claims against Nilsen must be dismissed as duplicative of claims against the District.[1] (See Doc. 28 at 3-4). Lincoln next contends that K.E.'s § 1983 claim asserted in Count III fails to enumerate which of K.E.'s civil rights Lincoln allegedly violated. (See Doc. 23 at 5-6; Doc. 34 at 1-4). Finally, defendants collectively argue that K.E.'s factual averments, even accepted

---

[1] The District and Nilsen also move to dismiss the IDEA and Section 504 claims in Count I, asserting that violations thereof are not actionable under 42 U.S.C. § 1983. (See Doc. 28 at 2). K.E. concurs that dismissal of these claims is appropriate. (See Doc. 33 at 2). K.E. further concedes that the individual-capacity claims against Nilsen in Counts I and II are factually insufficient to withstand Rule 12 review. (See id. at 7). The foregoing claims will be dismissed without further discussion.

as true, are insufficient to establish her entitlement to relief under § 1983 and the Fourth and Fourteenth Amendments (Counts I and II) and under Title IX (Count III).  (See Doc. 23 at 6-11; Doc. 28 at 4-19; Doc. 34 at 4-5).  The court will address these contentions *seriatim*.

### A. Official-Capacity Claims

A suit against a government employee in his or her official capacity is synonymous with a claim against the public entity that employs him or her.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)).  Redundant official-capacity claims warrant dismissal.  See Snell v. City of York, 564 F.3d 659, 120 (3d Cir. 2009).  The District is named as a defendant in both constitutional claims against Nilsen.  (See Doc. 4 ¶¶ 38-45).  Therefore, the claims against Nilsen in his official capacity will be dismissed with prejudice as duplicative of those against the District.  See Grayson, 293 F.3d at 108.

### B. Section 1983 Claims

Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials.  See 42 U.S.C. § 1983.  Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights otherwise protected by federal law.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim under § 1983, plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro,

51 F.3d 1137, 1141 (3d Cir. 1995)).  The moving defendants do not dispute K.E.'s averment that Puterbaugh acted under color of state law.  (See Doc. 4 ¶ 9).

### 1.   *Lincoln Intermediate Unit 12*

In Count III of the amended complaint, K.E. asserts claims pursuant to § 1983 and Title IX against Lincoln and the District.  (Doc. 4 ¶¶ 46-51).  Lincoln argues that Count III lacks requisite specificity, contending that K.E. "fails to provide [Lincoln] . . . with adequate notice of the rights it allegedly violated" under § 1983.  (Doc. 34 at 2).  K.E. ripostes that Count III states Fourth and Fourteenth Amendment claims against Lincoln by incorporating the facts and allegations set forth in the preceding forty-five paragraphs.  (See Doc. 32 at 2).  K.E.'s rejoinder is unavailing.

The amended complaint captions Count III as stated "pursuant to 42 U.S.C. § 1983."  (Doc. 4 at 10).  Count III does not otherwise cite § 1983, and no theory of liability is articulated thereunder.  (See id. ¶¶ 46-51).  Instead, the averments in Count III broadly incorporate all preceding paragraphs and proceed to assert a claim under Title IX.  (See id.)  This desultory manner of pleading falls woefully short of providing Lincoln with "fair notice of what the . . . claim is and the grounds upon which it rests."  Phillips, 515 F.3d at 232 (quoting Twombly, 550 U.S. at 555).

K.E.'s responsive briefing is elucidative.  K.E. indicates that her objective in Count III is to assert § 1983 claims against Lincoln which are identical in substance to those set forth in Counts I and II against the District.  (See Doc. 32 at 2).  However, K.E.'s attempt to remedy Count III's deficiencies in her opposition papers is futile.  The court need not assess her belated assertions, as "[i]t is axiomatic that

8

the complaint may not be amended by the briefs in opposition to a motion to dismiss." Frederico v. Home Depot, 507 F.3d 188, 201 (3d Cir. 2007) (quoting Pennsylvania *ex rel.* Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)). Count III will be dismissed without prejudice as to the § 1983 claim, and K.E. will be provided an opportunity to correct the deficiencies noted hereinabove.

### 2. *Dover Area School District*

K.E. further alleges pursuant to § 1983 that the District violated her rights to security of person, due process, and equal protection under the Fourth and Fourteenth Amendments (Counts I and II). (Doc. 4 ¶¶ 38-45). The District contends that K.E.'s averments are factually insufficient to establish its liability for Puterbaugh's course of conduct. (See Doc. 28 at 4-16). The court will first analyze the propriety of K.E's Fourth Amendment claim. The court will then address the adjurations set forth in the District's motion to dismiss.

#### a. **Fourth Amendment**

The Fourth Amendment, applicable to the states through the Fourteenth Amendment, Wolf v. Colorado, 338 U.S. 25, 27-28 (1949), protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment's protection against unreasonable searches and seizures is principally concerned with criminal investigations. See Ingraham v. Wright, 430 U.S. 651, 674 n.42 (1977) (citing Whalen v. Roe, 429 U.S. 589, 604 n.32 (1977)). Cases applying the Fourth Amendment to public school employees are limited to investigations of

student misconduct and student discipline. See, e.g., New Jersey v. T.L.O., 469 U.S. 325 (1985). As a consequence, student allegations of sexual assault committed by school employees rarely fall within the ambit of the Fourth Amendment. See, e.g., SF *ex rel.* Freeman v. Del. Valley Sch. Dist., No. 3:08-CV-581, 2008 WL 4680580, at *6 (M.D. Pa. Oct. 20, 2008); K.K. *ex rel.* Knowles v. Weeks, No. 1:CV-04-2290, 2007 WL 2782273, at *6 (M.D. Pa. Sept. 21, 2007).

In Count I of the amended complaint, K.E. avers that Puterbaugh's conduct violated her "rights to the security of her person" under the Fourth and Fourteenth Amendments. (Doc. 4 ¶ 39). Yet K.E. does not allege an invasion of privacy during the course of an official investigation into her behavior. Contrarily, the amended complaint alleges, *inter alia*, that the District failed to investigate Puterbaugh's sexually abusive conduct despite multiple reports thereof. (See id. ¶ 40). It is well-established that the Fourteenth Amendment Due Process Clause is the appropriate vehicle for vindicating personal security and bodily integrity claims asserted in this context. See Black by Black v. Ind. Area Sch. Dist., 985 F.2d 707, 709 n.1 (3d Cir. 1993); SF, 2008 WL 4680580, at *6; K.K., 2007 WL 2782273, at *6. Accordingly, the court will dismiss K.E.'s Fourth Amendment claim with prejudice.

### b. **Fourteenth Amendment**

K.E. raises Fourteenth Amendment claims against the District under the Monell theory of municipal liability (Count I) and the state-created danger doctrine (Count II). (Doc. 4 ¶¶ 38-45). The District first urges dismissal of Count I, arguing that K.E. fails to plead the existence of a District policy or custom causally linked to

K.E.'s alleged injuries.² (See Doc. 28 at 4-12). The District next asserts that dismissal of Count II is appropriate because the amended complaint is devoid of allegations that the District affirmatively placed K.E in a position of danger. (See id. at 14-16). The court will resolve the District's entreaties in turn.

### i. *Monell* Policy or Custom Theory

Municipalities and other local government entities may not be held liable in a § 1983 suit for conduct of their employees under a theory of *respondeat superior* or vicarious liability. Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997) (citing Monell, 436 U.S. at 692); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). The Supreme Court announced in Monell v. Department of Social Services, 436 U.S. 658 (1978), that municipal liability only arises when a government causes an employee to violate another's constitutional rights by an official custom or policy. See also Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). A district court must review a government liability claim "independently of the [S]ection 1983 claims against" individual defendants. Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004) (internal quotation omitted).

---

² The District also includes Count II in this remonstration, but fails to delineate its relevance thereto. (See Doc. 28 at 4, 5 n.2). To the extent that the District's arguments concerning policy or custom inform its supplications regarding the state-created danger claim, the court will consider the District's briefing *in toto* when analyzing Count II.

11

To establish liability under Monell, a plaintiff must identify the challenged policy or custom, attribute it to the public entity itself, and show a causal link between the execution of the policy or custom and the injury suffered. See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). A policy exists "when a decisionmaker possess[ing] final authority to establish . . . [public] policy with respect to the action issues an official proclamation, policy or edict." Id. at 584 (quoting Kneipp, 95 F.3d at 1212). A custom is "an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.' " Id. (quoting Bryan Cty., 520 U.S. at 404). A plaintiff may also establish a policy or custom when a "policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' " Id. (quoting Bryan Cty., 520 U.S. at 417-18). The instant matter implicates the third scenario.

K.E. asserts various and sundry Monell claims which may be distilled into two paradigmatic categories: failure-to-train and failure-to-act. (See Doc. 4 ¶¶ 38-42). The gravamen of K.E.'s allegations is that the District is liable for Puterbaugh's conduct, *first*, through its failure to train school employees to detect or report signs of sexual abuse, and *second*, through its failure to respond to student reports of inappropriate sexual contact. (See id.) With respect to both theories, the

12

District posits that K.E.'s averments, presumed to be true, do not establish that it acted with deliberate indifference to K.E.'s constitutional rights. (See Doc. 28 at 5-12). K.E. counters that she has sufficiently alleged the presence of District policies or customs borne of deliberate indifference which proximately caused her injuries. (See Doc. 33 at 3-7).

A government entity exhibits deliberate indifference when it "disregard[s] a known or obvious consequence of [its] . . . action." Connick v. Thompson, 563 U.S. 51, 61 (2011); see Vargas v. City of Phila., 783 F.3d 962, 974 (3d Cir. 2015). Upon such a showing, actual or constructive notice may be imputed to government decisionmakers. See Connick, 563 U.S. at 63.

Failure to train amounts to deliberate indifference when it causes a pattern of cognate constitutional violations. See Connick, 563 U.S. at 62; Kelly v. Borough of Carlisle, 622 F.3d 248, 265 (3d Cir. 2010). Under exceptional factual circumstances, a single incident which is the "obvious consequence of failing to provide" training may also serve to demonstrate deliberate indifference. Connick, 563 U.S. at 63; see Kelly, 622 F.3d at 265-66. Alleged training deficiencies must closely relate to the constitutional injury. City of Canton v. Harris, 489 U.S. 378, 391 (1989); Beck v. City of Pittsburgh, 89 F.3d 966, 971-72 (3d Cir. 1996). The failure-to-act theory of liability is also governed by the foregoing principles. See Berg v. Cty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000); M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist., 43 F. Supp. 3d 412, 424-25 (M.D. Pa. 2014).

In cases involving student sexual assault, a school district's failure to train its employees to detect or report signs of abuse may constitute deliberate indifference if a pattern of causally connected employee violations is established.  See Kline *ex rel.* Arndt v. Mansfield, 255 F. App'x 624, 629-30 (3d Cir. 2007) (nonprecedential); Douglas v. Brookville Area Sch. Dist., 836 F. Supp. 2d 329, 364 (W.D. Pa. 2011). Similarly, a school district's inaction subsequent to one or more complaints of sexual abuse conveyed directly to school officials may also manifest deliberate indifference.  See Kline, 255 F. App'x at 628; Johnson v. Elk Lake Sch. Dist., 283 F.3d 138, 144 n.1 (3d Cir. 2002); Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989); e.g., Doe v. Boyertown Area Sch. Dist., 10 F. Supp. 3d 637, 650-51 (E.D. Pa. 2014).

K.E. alleges that on at least two occasions, District administrators commenced investigations into charges of inappropriate sexual behavior levied against Puterbaugh: (1) following complaints of female band students submitted in 2000, (Doc. 4 ¶¶ 16-17); and (2) subsequent to K.E.'s November 2004 report to a Dover Area High School teacher.  (Id. ¶¶ 22-25).  In each instance, the District purportedly terminated its investigation without taking further action and without alerting authorities.  (Id. ¶¶ 17, 25).  K.E. additionally avers that, prior to November 2004, she reported Puterbaugh's sexually abusive conduct to teachers at Dover Intermediate School, who shared her allegations exclusively with a school guidance counselor.  (Id. ¶¶ 18-19).  According to the amended complaint, staff at Dover

Intermediate School and Dover Area High School responded to both of K.E.'s reports by advocating that she recant. (Id. ¶¶ 19, 24).

The averred facts support an inference that District policymakers were actually or constructively aware of student reports regarding Puterbaugh's conduct and of the potential for deficiencies in employee training. Even excluding K.E.'s initial complaint, which ostensibly did not reach administrators, (see id. ¶¶ 18-19), the District received and investigated consonant accusations on at least two occasions between 2000 and 2004. (Id. ¶¶ 16-17, 22-25). Each underlying report occurred at Dover Area High School and inculpated Puterbaugh. (Id.) These charges are sufficient to place the District on notice of the need to take action, and to train its employees accordingly, in order to avoid student injury. K.E.'s contention that school employees twice pressured her to rescind her statements against Puterbaugh further evinces constitutional deficiencies in the District's training regimen. (Id. ¶¶ 19, 24). K.E. has adequately alleged deliberate indifference pursuant to failure-to-train and failure-to-act theories of liability.

The District additionally submits that dismissal of Count I is appropriate because K.E. fails to plead facts which demonstrate "that policymakers were aware of . . . Puterbaugh's and . . . [K.E.'s] alleged relationship while her constitutional harm was ongoing." (Doc. 28 at 12). As discussed *supra*, K.E. broadly avers that District officials learned of her accusations against Puterbaugh on at least one occasion during the relevant time period—in November 2004. (See Doc. 4 ¶¶ 22-25). K.E.'s *multum in parvo* allegations do not speculate as to the identities of said

15

<215>officials. (See id.) Notwithstanding some degree of provisional vagueness, "[d]iscovery will reveal the precise roles of all involved" and illuminate which District employees became privy to pertinent information and at what time. Brownstein v. Gieda, 649 F. Supp. 2d 368, 376 (M.D. Pa. 2009) (quoting Phillips, 515 F.3d at 234). K.E.'s § 1983 claims premised on Monell liability are sufficient to withstand the District's Rule 12(b)(6) challenges.

### ii. *State-Created Danger Theory*

When the affirmative exercise of state authority either causes injury to a citizen or leaves a citizen more vulnerable to injury at the hands of a third party, the government contravenes the substantive due process protections of the Fourteenth Amendment. See Bright v. Westmoreland Cty., 443 F.3d 276, 281 (3d Cir. 2006) (quoting Schieber v. City of Phila., 320 F.3d 409, 416 (3d Cir. 2003)). This principle of liability is commonly referred to as the "state-created danger" theory. See id. In order to establish a state-created danger claim, a plaintiff must allege four elements:

> (1) the resulting injury was foreseeable and fairly direct;
> (2) the state actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state actor used his authority to create an opportunity for danger that otherwise would not have existed.

See Phillips, 515 F.3d at 235. With respect to the fourth element, liability is "predicated upon the states' *affirmative acts* which work to the plaintiffs' detriment[] in terms of exposure to danger." Bright, 443 F.3d at 282 (quoting D.R. by L.R v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1374

16

(3d Cir. 1992)).  This element is not satisfied unless there is "but for" causation. Kaucher v. Cty. of Bucks, 455 F.3d 418, 433 (3d Cir. 2006).

The District argues that K.E. "does not sufficiently aver that there was affirmative action by . . . [the District] or its agents which created a danger to . . . [K.E.], or which made her more vulnerable than she would have been" otherwise.  (Doc. 28 at 15).  *Per contra*, K.E. responds that she "has specifically alleged that . . . [the District] used its authority through teachers to dissuade her from continuing to report the abuse, and that the abuse then continued, making her more susceptible to danger as she felt unable to report." (Doc. 33 at 8). K.E.'s position is correct.

The facts pled in the amended complaint, as well as the reasonable inferences drawn therefrom, encompass affirmative acts on behalf of the District which increased K.E.'s risk of harm.  Namely, on at least two occasions, school staff purportedly pressured K.E. to disclaim her reports of Puterbaugh's abuse.  (See Doc. 4 ¶¶ 19, 24).  K.E. acquiesced in both instances, stating in the latter that she "would lie and say that it did not happen" if anyone inquired.  (Id. ¶ 24).  It is pellucidly clear that, if proven, the gratuitous conduct of school staff amplified K.E.'s vulnerability to further harm from Puterbaugh.  The District's motion to dismiss will therefore be denied as to the state-created danger claim.

### C.   Title IX Claims

Title IX proscribes discrimination, exclusion, or denial of benefits on the basis of sex in educational institutions or programs which receive federal funding.

20 U.S.C. § 1681.  The Supreme Court has recognized an implied private right of action thereunder, see Cannon v. Univ. of Chi., 441 U.S. 677 (1979), as well as a monetary damage remedy in such private actions.  See Franklin v. Gwinnett Cty. Pub. Sch., 503 U.S. 60 (1992).  To succeed on a Title IX sexual harassment claim, a plaintiff student must show: (1) *quid pro quo* sexual harassment, or a sexually hostile educational environment; (2) actual notice to an "appropriate person" who has the authority to institute corrective measures; and (3) a response to the harassment that amounts to deliberate indifference.  Bennett v. Pa. Hosp. Sch. of Nurse Anesthesia, No. 01-CV-4098, 2002 WL 32341792, at *3 (E.D. Pa. Oct. 29, 2002) (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291-92 (1998)); see Bostic v. Smyra Sch. Dist., 418 F.3d 355, 359 (3d Cir. 2005).

      K.E. alleges in Count III that Puterbaugh's course of conduct constituted sexual harassment.  (Doc. 4 ¶¶ 49-50).  She charges that Lincoln and the District violated her equal right to education under Title IX when officials failed to appropriately investigate and report her allegations of sexual abuse.  (Id. ¶¶ 22-25, 46-51).  Lincoln moves to dismiss K.E.'s Title IX claim, asserting that the amended complaint "does not identify an 'appropriate person' . . . [or] allege that any appropriate person had actual knowledge of the abuse by . . . Puterbaugh . . . . and failed to take action to stop it."  (Doc. 23 at 11).  The provenance and substance of the District's objection to Count III is identical.  (See Doc. 28 at 18-19).  K.E. ripostes that her averments, construed in the light most favorable to her, provide adequate

notice of the Title IX claim and the grounds upon which it rests. (See Doc. 32 at 5-6; Doc. 33 at 9-10). The court is compelled to agree with K.E.

Under Title IX, an appropriate person "is, at a minimum an official of the recipient entity with authority to take corrective action to end the discrimination." Gebser, 524 U.S. at 290. A school principal will ordinarily be an appropriate person for purposes of Title IX notice. See Warren *ex rel.* Good v. Reading Sch. Dist., 278 F.3d 163, 171 (3d Cir. 2002). However, any official with "authority to supervise a teacher and to investigate a complaint of misconduct" may qualify, even if he or she is not permitted to terminate or suspend employees. Id. at 173. The job responsibilities of each purported appropriate person must be evaluated during the period relevant to the claim. See id. at 170, 172-73.

An appropriate person must have actual knowledge of the misconduct and fail to respond. See Bostic, 418 F.3d at 362; Warren, 278 F.3d at 173-74. Knowledge of the mere possibility of harassment is insufficient, but an appropriate person need not be absolutely certain that harassment has occurred in order to satisfy the knowledge requirement. See Dawn L. v. Greater Johnstown Sch. Dist., 586 F. Supp. 2d 332, 367 (W.D. Pa. 2008) (citing Bostic, 418 F.3d at 360). "An educational institution has 'actual knowledge' if it knows the underlying facts, indicating sufficiently substantial danger to students, and [i]s therefore aware of the danger." Bostic, 418 F.3d at 361 (quoting 3C FED. JURY PRAC. & INSTR. § 177.36 (5th ed. 2001)).

K.E. alleges that multiple officials from the District and at least one "specialist" from Lincoln received notice of her complaint against Puterbaugh in November 2004. (See Doc. 4 ¶¶ 23, 25). The amended complaint does not endeavor to delineate the roles and responsibilities of said officials, nor does it explicate the scope of K.E.'s report to her teacher. However, given the severity of K.E.'s accusations against Puterbaugh, it is reasonable to infer that even the most truncated account thereof would reveal the risk of substantial danger to K.E.

K.E.'s allegations are necessarily imprecise. Whether a person qualifies as "appropriate," and their knowledge "actual," is a fact-based inquiry more appropriately resolved at a later stage of litigation. The court finds that K.E.'s allegations are sufficient to proceed to discovery. Defendants' motions to dismiss K.E.'s Title IX claim will be denied.

## IV.  Conclusion

Defendants' motions (Docs. 21, 22) to dismiss will be granted in part and denied in part. An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:   May 18, 2016